JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-Appellant, Rosetta Harris-Powers ("Harris-Powers"), appeals her conviction and sentence. Finding some merit to the appeal, we affirm her conviction, but vacate her sentence and remand for resentencing.
 {¶ 2} In 2005, Harris-Powers and her codefendants, Kiawanna Harris ("Harris") and Karyle Hagwood ("Hagwood"), were charged with two counts of aggravated robbery and two counts of felonious assault arising from an incident involving Claude Stolkowski. The matter proceeded to a jury trial, at which Harris-Powers was found guilty of one count of aggravated robbery. The court sentenced her to three years in prison. The court also sentenced her to one year in prison in an unrelated case, Case No. CR-05-461114A. The court ordered the two sentences to run consecutively. The following evidence was presented to the jury.
 {¶ 3} In 2005, the victim, Claude Stolkowski ("Stolkowski"), received a phone call from his girlfriend, Harris-Powers, asking him to pick her up at her daughter's house so that she could spend the night at his house.[1] Stolkowski returned to work after he dropped off Harris-Powers at his home. When he returned home from work, he observed two individuals, whom he did not recognize, sitting on his front porch. He asked the male, later identified as Hagwood, why he was on his porch.[2] Hagwood responded that he needed to borrow a flashlight and a screwdriver to repair his truck. Stolkowski told Hagwood that he could not help him, and Hagwood left.
 {¶ 4} Stolkowski entered his home and called for Harris-Powers. She acknowledged that the two people on the porch had also asked her for assistance, but she refused. Shortly thereafter, Harris phoned her mother. Harris-Powers told Stolkowski that Harris was coming to the house. As Stolkowski opened his backyard gate for Harris, Hagwood confronted Stolkowski and struck him in the head with a hammer. Hagwood then forced his way into Stolkowski's home, and Harris followed. Hagwood demanded money and took Stolkowski's cell phone, wallet, and gold chain. Hagwood and Harris then left the house. Stolkowski asked Harris-Powers to call the police, but she was unable to locate the phone, so Stolkowski ran to the neighbors to call police. When Stolkowski returned home, Harris drove up the driveway and told him that she had attempted to follow Hagwood. However, the police discovered Hagwood and all of the stolen items in the back seat of the car driven by Harris. Harris and Hagwood were arrested at the scene.
 {¶ 5} Harris-Powers appeals, raising five assignments of error.
 {¶ 6} In her first assignment of error, Harris-Powers argues that there was insufficient evidence to sustain her conviction. In her second assignment of error, she argues that her conviction is against the manifest weight of the evidence. Although they involve different standards of review, these assignments of error will be discussed together as they involve the same evidence.
 {¶ 7} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 8} In evaluating a challenge to the verdict based on the manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." State v. Thompkins, supra at 38. As the Ohio Supreme Court declared:
 "Weight of the evidence concerns `the inclination of the greater amount of credible evidence offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 9} In State v. Bruno, Cuyahoga App. No. 84883, 2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley (1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Moreover, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Garrow (1995), 103 Ohio App.3d 368,659 N.E.2d 814.
 {¶ 10} In the instant case, Harris-Powers was convicted of aggravated robbery pursuant to R.C. 2911.01(A)(3), which provides:
 "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 "(3) Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 11} Harris-Powers argues that there was insufficient evidence to support the aggravated robbery conviction because the State failed to produce evidence on the element of knowingly cause serious physicalharm. We disagree.
 {¶ 12} Harris-Powers' argument that she did not possess the knowledge requirement as it relates to serious physical harm is misplaced. In reviewing R.C. 2911.01(A)(3), we note that there is no mens rea element required for causing serious physical harm. On the other hand, to be convicted of felonious assault, one must knowingly cause serious physical harm to another. Because Harris-Powers was convicted of aggravated robbery and not felonious assault, the lack ofknowledge is irrelevant regarding physical harm.
 {¶ 13} Furthermore, under the complicity statute, R.C. 2923.03, the accused may be charged as an offender for the offense committed. Hagwood testified that Harris and Harris-Powers met with him to plan the robbery. According to the evidence presented at trial, Harris and Hagwood initially waited in Stolkowski's backyard and then sat on the front porch waiting for Stolkowski to return home. Harris-Powers suggested that they wait on the porch and act as if their car had broken down.
 {¶ 14} When Stolkowski went inside and told Harris-Powers about the two people on the porch, she acknowledged that they had come earlier asking for her assistance, but she did not open the door for them. Moments later, Harris called Harris-Powers to let her know that she was returning with Hagwood. Harris-Powers told Stolkowski that Harris was coming to the house. As Stolkowski was about to let Harris in, Harris-Powers told him, "[d]on't open the door." When Stolkowski went outside, Hagwood attacked him. Stolkowski asked Harris-Powers to call the police, but she could not find the phone. Stolkowski then ran to a neighbor's house to call police. At the same time, Harris left the scene to pick up Hagwood, who had run down the street. Harris then discussed with Hagwood how the three of them should divide Stolkowski's money and credit cards. The evidence also shows that Harris returned to Stolkowski's home with Hagwood hiding in the back seat, where the police discovered him with the stolen property.
 {¶ 15} In viewing the evidence in the light most favorable to the prosecution, we conclude that the conviction is supported by sufficient evidence. We also find that the jury did not lose its way so as to require a new trial. Therefore, the first and second assignments of error are overruled.
 {¶ 16} In her third assignment of error, Harris-Powers argues that the trial court erred when it joined her trial with Harris' trial. Harris-Powers bases her argument on the following three grounds: (1) her defense and Harris' defense were antagonistic, (2) her inability to cross-examine Harris, and (3) the accumulation of Harris' wrongdoing was so prejudicial that it violated Harris-Powers' right to a fair trial. She further argues that if the severance of her trial was waived, her conviction should be reversed because plain error exists. She contends that the admission of Harris' statement to the police constituted plain error and violated Bruton v. United States (1968), 391 U.S. 123,88 S.Ct. 1620, 20 L.Ed.2d 476. In her fourth assignment of error, Harris-Powers contends that she was denied her constitutional right to confrontation in violation of the Sixth Amendment of the United States Constitution. These assignments of error will be addressed together, because they involve the same evidence.
 {¶ 17} It is well established that the law and public policy generally favor the joinder of charges and defendants which involve the same acts, transactions, or course of criminal conduct. See Crim.R. 8; State v.Dunkins (1983), 10 Ohio App.3d 72, 460 N.E.2d 688. Relief from such joinder is available under Crim.R. 14 upon a demonstration of prejudice by the defendant. State v. Owens, 51 Ohio App.2d 132, 366 N.E.2d 1367. A party waives any claim of error concerning the joinder by failing to raise an objection to the joinder. Furthermore, the court held that "[a] motion for severance due to prejudicial misjoinder under rules of procedure for relief from prejudicial misjoinder must be renewed at the close of the state's case or at the conclusion of all the evidence and unless made at that time, it is waived. Owens, supra at paragraph two of the syllabus. See, also, Crim.R. 8(B); State v. Walker (1990),66 Ohio App.3d 518, 585 N.E.2d 848; State v. Strobel (1988), 51 Ohio App.3d 31,554 N.E.2d 916; State v. VanHorn (Mar. 3, 2000), Lucas App. No. L-98-1171.
 {¶ 18} In the instant case, Harris-Powers failed to object to the joinder of her trial, i.e, she did not file a motion to sever the case at any stage of the proceedings. Furthermore, she has failed to establish sufficient prejudice from joinder to warrant a separate trial or to show that the trial court abused its discretion. There is no indication from the record that the jury was influenced by the joinder. In fact, the jury's verdict demonstrates that it considered each charge separately, i.e., finding Harris-Powers not guilty of felonious assault and finding her guilty of only one count of aggravated robbery. Therefore, we find that she waived this argument and that joinder was proper.
 {¶ 19} Harris-Powers argues, in the alternative that, if the severance of her trial was waived, her conviction should be reversed because plain error exists. She contends that the admission of Harris' statement to Detective Pochatek violated Bruton. Harris-Powers complains about the following testimony regarding Harris' statement to police:
 "Detective Pochatek: Do you think your mother had Claude robbed? Harris: I won't say yes or no but I thought of it. I thought if anyone would have a motive, it would be her. This would not be anything new to her. And then she started acting crazy trying to distract everything."
 {¶ 20} A defendant's right to cross-examination, secured by the confrontation clause of the Sixth Amendment, is violated in a joint trial with a codefendant who does not testify, by the admission of the codefendant's statements inculpating the defendant, even where the jury is instructed that the codefendant's statement is to be disregarded in determining the defendant's guilt or innocence. Bruton, supra. InState v. Moritz (1980), 63 Ohio St.2d 150, 407 N.E.3d 126, the Ohio Supreme Court explained the rationale behind Bruton, stating that: "[T]he introduction of a potentially unreliable confession of one defendant which implicates another defendant without being subject to cross-examination deprives the latter defendant of his right to confrontation guaranteed by the Sixth Amendment."
 {¶ 21} However, the mere finding of a violation of a defendant's confrontation clause rights does not automatically require reversal of an ensuing criminal conviction. See Schneble v. Florida (1972),405 U.S. 427, 92 S. Ct. 1056, 31 L. Ed. 2d 340. In the instant case, the reference to Harris-Powers in Detective Pochatek's narration of Harris' statement was not indicative of Harris-Powers' guilt. Accordingly, we conclude that the error was harmless beyond a reasonable doubt and does not warrant a reversal of Harris-Powers' conviction. See Harrington v.California (1969), 395 U.S. 250,89 S. Ct. 1726, 23 L. Ed. 2d 284;State v. Benton (May 19, 1977), Cuyahoga App. No. 35698.
 {¶ 22} Moreover, an error does not constitute plain error or a defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise. State v. Long (1978),53 Ohio St. 2d 91, 372 N.E.2d 804. Notice of plain error is to be taken with the utmost caution and only to avoid a manifest miscarriage of justice. Id.
 {¶ 23} Harris-Powers has failed to demonstrate plain error in this case. The record contains sufficient evidence to convict her of aggravated robbery. Hagwood testified that Harris-Powers planned the robbery with him and Harris. She also told Hagwood and Harris to wait on the porch for Stolkowski to return. She later told Stolkowski that Harris was coming to the house so that he would have to go outside. The jury's reliance on this testimony was sufficient to sustain Harris-Powers' conviction. We find no plain error.
 {¶ 24} Accordingly, the third and fourth assignments of error are overruled.
 {¶ 25} In her fifth assignment of error, Harris-Powers challenges her sentence. She argues that the court erred when it imposed consecutive sentences under R.C. 2929.14(E)(4). She claims that State v.Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, requires that her sentence be vacated and her case be remanded for resentencing. The State concedes that Foster is implicated and requires us to remand for resentencing.
 {¶ 26} In February 2006, the trial court imposed a three-year sentence for aggravated robbery and a one-year sentence for perjury, to be served consecutively pursuant to R.C. 2929.14(E)(4).
 {¶ 27} In Foster, supra at ^61, 64, and 67, the Ohio Supreme Court held that judicial fact-finding to impose a consecutive sentence is unconstitutional in light of Blakely. The Foster court also severed and excised, among other statutory provisions, R.C. 2929.14(E), because imposing consecutive sentences requires judicial fact-finding.Foster, supra, applying United States v. Booker (2005), 543 U.S. 220,125 S.Ct. 738, 160 L.Ed.2d 621; Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and Apprendi v. New Jersey (2000),530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435. "After the severance, judicial fact-finding is not required before a prison term may be imposed within the basic ranges of R.C. 2929.14(A) based upon a jury verdict or admission of the defendant." Id. at ^[99. As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings and give reasons for imposing maximum, consecutive or more than the minimum sentence." Foster, supra at paragraph seven of the syllabus, State v.Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, paragraph three of the syllabus.
 {¶ 28} In the instant case, the trial court imposed consecutive sentences pursuant to R.C. 2929.14(E)(4). Because the trial court relied on an unconstitutional provision in imposing Harris-Powers' sentence, this court must vacate the sentence and remand for resentencing in accordance with Foster. See Foster, supra, at ¶¶ 103-106; State v.Peyton, Cuyahoga App. No. 86797, 2006-Ohio-3951. Thus, the fifth assignment of error is sustained.
 {¶ 29} Accordingly, we affirm the conviction, but vacate the sentence and remand for resentencing.
It is ordered that appellant recover from appellee her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, PRESIDING JUDGE
SEAN C. GALLAGHER, J. and MELODY J. STEWART, J. CONCUR
[1] Harris is Harris-Powers' daughter. Harris' convictions were affirmed in State v. Harris (Jan. 25, 2007), Cuyahoga App. No. 87914.
[2] Hagwood later testified that Harris was the other person with him on the porch.